IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| MATTHEW ROSE, <br><br> Plaintiff, <br><br> v. <br><br> DANIELS SUMMIT LODGE, <br><br> Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT** <br><br> Case No. 2:16-cv-00938-JNP-PMW <br><br> District Judge Jill N. Parrish |

Before the court is a motion for summary judgment, [Docket 42], and a motion to exclude expert testimony, [Docket 50], filed by Daniels Summit Lodge (Summit Lodge). The court GRANTS the motion for summary judgment and DENIES AS MOOT the motion to exclude expert testimony.

**BACKGROUND**

On March 18, 2016, Matthew Rose rented a 2014 Polaris snowmobile from Summit Lodge. He signed a document releasing Summit Lodge from liability for any negligence claims arising from his use of the snowmobile. While Rose was approaching an opening in a wooden fence on the snowmobile, the throttle malfunctioned. It stuck on full-throttle, causing Rose to be thrown from the snowmobile into the fence. Rose was injured in the accident.

The Polaris snowmobile rented by Rose has a thumb-operated throttle lever. The driver compresses the throttle lever to accelerate. When the driver releases the lever, it is designed to return to the idle position. The snowmobile also has a throttle safety switch, which is designed to automatically shut off the engine whenever pressure is removed from the throttle lever and the

throttle cable or valves do not return to the closed position. Additionally, the snowmobile normally has two methods of manually shutting off the engine in the event of an uncontrolled acceleration. The driver can either press the kill switch button or turn the key to the off position. Summit Lodge, however, modified the snowmobile Rose rented so that no key was required to operate it. Thus, Rose did not have the option of turning the key to stop the snowmobile.

The owner's manual for the 2014 Polaris suggests that the operator of the snowmobile conduct a number of pre-ride inspections, two of which are relevant in this case. First, the manual recommends that the operator compress the throttle lever to ensure that it returns to the idle position without binding or hesitation when released. Second, the manual suggests that the operator test the throttle safety switch to ensure that it is functioning properly. The owner's manual also recommends periodic maintenance of various components of the snowmobile. Not surprisingly, given that the manual suggests that the operator test these items before every ride, the manual also suggests checking both the throttle lever and the throttle safety switch at every service interval listed: 150 miles, 500 miles, 1,000 miles, 2,000 miles, and an annual preseason service.

Summit Lodge has a policy of documenting all maintenance and repairs performed on the snowmobiles that it rents to customers. The records for the snowmobile rented by Rose, which was purchased new in 2014, indicate that Summit Lodge performed a preseason service on October 19, 2015 and that the kill switch was replaced on February 15, 2016. Summit Lodge performs a number of maintenance tasks when it services a snowmobile, including checking the throttle.

Summit Lodge also inspects its snowmobiles on a regular basis. When a customer rents a snowmobile, an employee starts the machine, checks the throttle and the brakes, and drives it to a location where the customer can pick it up. When the customer returns the snowmobile, an employee then performs a more extensive inspection of the machine. This assessment is performed

from an inspection list that is taken from the pre-ride list found in the Polaris owner's manual and includes testing the throttle lever and the throttle safety switch.[1] Summit Lodge does not create written records for these routine inspections.

Rose sued both Polaris and Summit Lodge seeking to recover damages for injuries he sustained in his snowmobile accident. Rose and Polaris stipulated to a dismissal of the claims against Polaris. The claims that remain against Summit Lodge are for negligence and gross negligence. Rose argues that Summit Lodge is liable for his injuries because it negligently maintained the snowmobile's throttle[2] and negligently modified the snowmobile so that it would run without a key.

---

[1] Summit Lodge cited the deposition testimony of its corporate representative and a maintenance employee to establish its procedures for checking the throttle lever and throttle safety switch before and after renting a snowmobile to a customer. In its response to the evidence cited by Summit Lodge, Rose states: "Plaintiff disputes paragraph[s] 13 [and 14] of Defendant's Undisputed Material Facts for all of the reasons detailed throughout this response." But the court is unable to locate in Rose's response any citation to evidence that contradicts or calls into question evidence of Summit Lodge's pre-rental and post-rental procedures. Moreover, vague references to arguments or evidence found elsewhere in the nonmoving party's response are unfair to the moving party because he or she is not able to respond. More to the point, such vague responses violate Rule 56(c)(1) of the Federal Rules of Civil Procedure, which requires the nonmovant to cite "particular parts of materials in the record" to establish that a material fact is disputed. Absent any citation to record evidence contradicting the deposition testimony of Summit Lodge's witnesses, the court accepts the evidence provided by Summit Lodge as undisputed. *See* FED. R. CIV. P. 56(e) (a court may consider a fact undisputed "[i]f a party . . . fails to properly address another party's assertion as required by Rule 56(c)").

[2] Rose cites evidence that Summit Lodge did not properly maintain the snowmobile's skis, skags (steel runners bolted to the bottom of the skis), or brake pads. He also cites evidence that Summit Lodge did not adjust the snowmobile for Rose's weight or riding style or the trail conditions. But Rose does not cite evidence that any of these things caused the accident. Instead, he argues that the stuck throttle was the cause. Tenth Circuit "case law forbids the district court from relying on new arguments or materials to decide a summary judgment motion unless the opposing party is provided an opportunity to respond." *Geddes v. United Staffing All. Employee Med. Plan*, 469 F.3d 919, 928 (10th Cir. 2006). Because Rose never argued that anything other than a negligently

3

Summit Lodge moves for summary judgment on Rose's negligence and gross negligence claims. First, it argues that Rose contractually released his negligence claim. Second, Summit Lodge asserts that no reasonable jury could conclude that it was grossly negligent. In addition, Summit Lodge moves to exclude Rose's expert witness, arguing that he is not qualified to testify about snowmobile maintenance.

**LEGAL STANDARD**

Utah's substantive law applies to Rose's claims against Summit Lodge. But the court applies federal procedural law to determine whether summary judgment is warranted. *See Stickley v. State Farm Mut. Auto. Ins. Co.*, 505 F.3d 1070, 1076 (10th Cir. 2007). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The movant bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has met this burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To do this, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

When the nonmoving party bears the burden of proof at trial on a dispositive issue, that party must go "beyond the pleadings" and "designate specific facts" to "make a showing sufficient to establish the existence of an essential element to that party's case." *Celotex*, 477 U.S. at 322.

---

maintained throttle system caused the crash, only his throttle maintenance theory is relevant to this motion.

"The plain language of Rule 56(c) mandates the entry of judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.*

**ANALYSIS**

I. **MOTION FOR SUMMARY JUDGMENT**

   *A. Negligence*

Summit Lodge argues that it is entitled to summary judgment on Rose's negligence claim because Rose signed a preinjury release of this cause of action. "It is well settled that preinjury releases of claims for ordinary negligence can be valid and enforceable." *Penunuri v. Sundance Partners, Ltd.*, 301 P.3d 984, 991 (Utah 2013) [hereinafter *Penunuri I*]. "But 'preinjury releases are not unlimited in power and can be invalidated in certain circumstances.' Specifically, '(1) releases that offend public policy are unenforceable; (2) releases for activities that fit within the public interest exception are unenforceable; and (3) releases that are unclear or ambiguous are unenforceable.'" *Id.* (citations omitted). Rose argues that the court should not enforce the release that he signed because two of these exceptions apply here.

   1) Public Policy

First, Rose asserts that the release offends public policy. "To determine whether a contract offends public policy, [courts] first determine whether an established public policy has been expressed in either constitutional or statutory provisions or the common law." *Id*. In *Rothstein v. Snowbird Corp.*, for example, the Utah Supreme Court looked to public policy expressed in a statute immunizing ski resorts from liability for the inherent risks of skiing to invalidate a release signed by a skier. 175 P.3d 560, 563–65 (Utah 2007); *see* UTAH CODE § 78B-4-401. But that court refused to invalidate a release signed by a participant in a guided horseback tour because the statute

5

limiting liability for horseback riding does not contain a similar expression of public policy. *Penunuri I*, 301 P.3d at 993; see UTAH CODE §§ 78B-4-201 to -203.

Rose argues that the release should be invalidated under the public policy exception because snowmobiling is like skiing in that both sports are practiced by many Utah residents and contribute to the state's economy. He contends, therefore, that this case is similar to *Rothstein* and that the release should not be enforced. But the public policy exception is not an invitation for courts to engage in a free-wheeling analysis of the benefits of a particular activity. The Utah Supreme Court has held that this exception must be tethered to an expression of public policy contained in a constitution, statute, or the common law. *Penunuri I*, 301 P.3d at 991.

Rose has not identified any official expression of public policy that could justify the invalidation of releases of liability for injuries caused by operating snowmobiles. The public policy exception in *Rothstein* was tied to a specific expression of public policy regarding the sport of skiing contained in Utah Code section 78B-4-401. Because the Utah Legislature has not enacted a similar statutory expression of public policy regarding snowmobiling, the public policy exception does not apply here.

    2) Ambiguity

Second, Rose argues that the court should invalidate the release because it is unclear and ambiguous. "Preinjury releases, to be enforceable, must be 'communicated in a clear and unequivocal manner.'" *Pearce v. Utah Athletic Found.*, 179 P.3d 760, 767 (Utah 2008). However, "[t]o be effective, a release need not achieve perfection . . . . It suffices that a release be clear, unambiguous, and explicit, and that it express an agreement not to hold the released party liable for negligence." *Id.* (citation omitted).

The release signed by Rose states:

6

> 3. **Waiver, Release and Indemnification**. I understand and agree that Daniels Summit is not an insurer of my/my minor child's conduct. TO THE FULLEST EXTENT PERMITTED BY LAW, **I HERBY RELEASE, WAIVE, COVENANT NOT TO SUE, AND DISCHARGE** DANIELS SUMMIT LODGE AND ALL OF ITS TRUSTEES, DIRECTORS, MANAGERS, OFFICERS, EMPLOYEES, VOLUNTEERS, AGENTS AND REPRESENTATIVES (COLLECTIVELY, THE "RELEASEES") FROM ANY AND ALL LIABILITY, CLAIMS, DEMANDS AND CAUSES OF ACTION WHATSOEVER ARISING OUT OF OR RELATED TO ANY LOSS, DAMAGE, OR INJURY, INCLUDING DEATH, THAT MAY BE SUSTAINED BY ME/MY MINOR CHILD, WHETHER CAUSED BY THE **NEGLIGENCE** OF RELEASEES OR OTHERWISE, ARISING OUT OF OR RELATED TO MY/MY MINOR CHILD'S USE OF DANIELS SUMMIT OR PARTICIPATION IN THE SPORTS.[3]

Rose does not point to any language in the release and argue that it is ambiguous. Nor does he assert that the release language inadequately expresses an agreement not to hold Summit Lodge liable for negligence. Instead, he compiles a laundry list of additional information that he believes should have been included in the release. For example, Rose contends that the release is ambiguous because:

> a. The release fails to state that Defendant can ignore a manufacturer's (Polaris) specific maintenance guidelines;
>
> b. The release fails to state that Defendant may deliberately choose to not perform any necessary daily, monthly, or yearly maintenance on the snowmobile; [and]
>
> c. The release fails to state that Defendant modified the snowmobile's safety by eliminating the key as one of the ways to shut off the sled during an emergency; . . . .

---

[3] The term "Sports" is defined earlier in the contract to include a variety of activities, including snowmobiling.

Rose, however, does not cite authority for the proposition that a release must list the specific acts of negligence that are released. All that is necessary is "an agreement not to hold the released party liable for negligence." *Id.* (citation omitted). Indeed, the Utah Supreme Court has previously analyzed language that was nearly identical to the release language at issue here and determined that the language was not ambiguous. *Id.*[4] This court, therefore, is bound by the Utah Supreme Court's determination that this release language is sufficiently clear to bind a party that signs the release.

3) Conclusion

The court determines that the release is not contrary to public policy and is not ambiguous. Rose, therefore, contractually waived his ordinary negligence claim and Summit Lodge is entitled to summary judgment on this cause of action.

---

[4]The release in *Pearce* read:

> TO THE FULLEST EXTENT PERMITTED BY LAW, I HEREBY RELEASE, WAIVE, COVENANT NOT TO SUE, AND DISCHARGE THE UAF AND ALL OF ITS TRUSTEES, DIRECTORS, MANAGERS, OFFICERS, EMPLOYEES, VOLUNTEERS, AGENTS AND REPRESENTATIVES (COLLECTIVELY, THE "RELEASEES") FROM ANY AND ALL LIABILITY, CLAIMS, DEMANDS, AND CAUSES OF ACTION WHATSOEVER ARISING OUT OF OR RELATED TO ANY LOSS, DAMAGE, OR INJURY, INCLUDING DEATH, THAT MAY BE SUSTAINED BY ME/MY MINOR CHILD OR LOSS OR DAMAGE TO ANY PROPERTY BELONGING TO ME/MY MINOR CHILD, WHETHER CAUSED BY THE NEGLIGENCE OF RELEASEES OR OTHERWISE, ARISING OUT OF OR RELATED TO MY/MY MINOR CHILD'S USE OF THE SPORTS FACILITIES OR PARTICIPATION IN THE SPORTS.

*Pearce*, 179 P.3d at 763 n.1

### B. Gross Negligence

Summit Lodge also argues that it is entitled to summary judgment on Rose's gross negligence claim. "In Utah, gross negligence is 'the failure to observe even slight care; it is carelessness or recklessness to a degree that shows utter indifference to the consequences that may result.'" *Penunuri v. Sundance Partners, Ltd.*, No. 20160683, 2017 WL 3697701, at *8 (Utah Aug. 25, 2017) (citation omitted) [hereinafter *Penunuri II*]. "[T]he standard for granting summary judgment dismissing a gross negligence claim is whether, based on the undisputed material facts, reasonable minds could reach but one conclusion as to whether the defendant 'observe[d] even slight care' and did not demonstrate 'carelessness or recklessness to a degree that shows utter indifference to the consequences that may result.'" *Id.* (second alteration in original) (citation omitted).

In *Penunuri II*, for example, the plaintiff was participating in a guided horseback trail ride. *Id.* at *2. The parties agreed that the standard of care in guided horseback trail rides is to maintain a gap between horses that is 32 feet or less so that a trailing horse does not unexpectedly accelerate in order to catch up to the next horse in line. *Id.* at *8. The plaintiff's horse, however, fell behind the next horse in line by over 100 feet. *Id.* The guide decided to proceed to a clearing before stopping to address the gaps in the train of horses. *Id.* at *2. Before the train reached the clearing, the plaintiff was thrown from her horse and injured. *Id*. The plaintiff sued the company that operated the trail ride and the trial court granted summary judgment in favor of the company on the plaintiff's gross negligence claim. *Id.* at *3. The plaintiff appealed.

The issue before the Utah Supreme Court was whether a reasonable jury could conclude that the guide failed to exercise even slight care when she failed to immediately stop the train of horses and allow the plaintiff's horse to catch up after it had fallen behind by over 100 feet. The

9

Utah Supreme Court concluded that the trial court did not err by granting summary judgment in favor of the defendant. Although the plaintiff had produced evidence that the guide had breached the standard of care, the court held that a plaintiff must show more in order to avoid summary judgment on a gross negligence claim. *Id.* at *9. "Instead, the plaintiff must point to evidence that the defendant's conduct exposed the plaintiff to a significantly elevated level of risk." *Id.* The Utah Supreme Court reasoned that the *Penunuri II* plaintiff

> failed to point to evidence of the differential between the risk associated with the guide's decision to proceed to the clearing [before addressing the gap between the horses], on the one hand, and the risk associated with taking some other action, such as stopping and waiting for the gaps to close, on the other. Without such evidence, there is nothing that would sustain a jury's finding that the guide's decision to proceed to the clearing significantly increased the risk of harm to the riders. Instead, the jury could only speculate on the key question of how much more dangerous it was for the guide (1) to allow the gaps to temporarily increase before permanently resolving them by ponying up the horse rather than (2) for the guide to have taken some other course of action—e.g., stopping and waiting for the gaps to close themselves.

*Id.*; *see also Blaisdell v. Dentrix Dental Sys., Inc.*, 284 P.3d 616, 621–22 (Utah 2012) (affirming summary judgment on a gross negligence claim because it could not be reasonably asserted that the defendant had shown "utter indifference" to the possibility of harm).

1) Grossly Negligent Maintenance Theory

Rose first argues that Summit Lodge was grossly negligent in maintaining the throttle system of the snowmobile he rented. He contends that the standard of care for throttle maintenance is the manufacturer recommendations made in the owner's manual: checking the throttle lever and the throttle safety switch before each ride and at each of the suggested maintenance intervals.

Taking the evidence in the light most favorable to Rose, Summit Lodge checked the throttle lever twice and the throttle safety switch once between the time that the snowmobile was returned

10

by one customer and rented to the next customer. Summit Lodge checked the throttle lever in a pre-rental inspection and the throttle lever and the throttle safety switch in a post-rental inspection. But Summit Lodge did not perform the scheduled maintenance at 150 miles, 500 miles, 1,000 miles, or 2,000 miles[5] and therefore did not check the throttle lever and safety switch at these maintenance intervals.

Summit Lodge is entitled to summary judgment on Rose's grossly negligent maintenance theory because a reasonable jury could not conclude that it failed to observe even slight care in maintaining the throttle system. Summit Lodge complied with the pre-ride check suggested by the owner's manual by inspecting the throttle lever and throttle safety switch before a snowmobile was rented to a customer. Its only deviation from the owner's manual was failing to test the throttle system at the 150 mile, 500 mile, 1,000 mile, or 2,000 mile maintenance intervals. But testing the throttle before each rental qualifies as some care, and Rose has failed to produce any evidence to suggest that the failure to perform the same throttle tests again during these four maintenance intervals would have made the throttle system any safer. In short, Rose has failed to point to any evidence suggesting the degree of utter indifference required for gross negligence. *See Penunuri II*, 2017 WL 3697701, at *10 (affirming district court's ruling granting summary judgment on a gross negligence claim); *Blaisdell*, 284 P.3d at 621–22 (same).

Rose, moreover, failed to produce any evidence that the Summit Lodge's only deviation from the owner's manual, failing to test the throttle system at the 150 mile, 500 mile, 1,000 mile, or 2,000 mile maintenance intervals, caused his accident. Because the accident occurred at 6,700

---

[5] These are the only recommended service intervals fixed by mileage. After theses intervals, the only scheduled maintenance recommended by the owner's manual is an annual preseason service. Summit Lodge performed the scheduled preseason service before the date of the accident.

miles, it is difficult to see how an inspection performed thousands of miles earlier could have prevented the accident—especially given that the throttle lever and safety switch was inspected many times after these service intervals.

Finally, Rose has not presented any evidence of the differential between the risks associated with following the owner's manual by testing the throttle lever and safety switch before each ride *and* at the recommended maintenance intervals, on the one hand, and the risks associated with Summit Lodge's practice of testing the throttle lever and safety switch before renting a snowmobile to a customer but not at the four recommended maintenance intervals, on the other. Absent any evidence of a disparity between the risks associated with following the owner's manual and the risks associated with Summit Lodge's maintenance of the throttle system, a jury could only speculate as to how much more dangerous Summit Lodge's maintenance procedures were. *See Penunuri II*, 2017 WL 3697701, at *9. In short, there is no evidence that Summit Lodge's maintenance of the throttle fell so far below the alleged standard of care that it rose to the level of gross negligence.

2) Grossly Negligent Modification Theory

Rose also argues that Summit Lodge acted with gross negligence when it modified the snowmobile so that it would run without a key. He alleges that this modification eliminated one of the two normal methods of manually shutting off the engine (the key and the kill switch) in order to stop his uncontrolled acceleration.

Once again, however, Rose has failed to cite evidence of the differential in risk between having two methods of shutting off the engine and having only one method of shutting off the engine. More importantly, Rose has failed to identify any evidence suggesting that the removal of the key system caused the accident. It is undisputed that the kill switch was functional, that Rose

12

knew how to use it to turn off the engine, and that he knew where it was located. Furthermore, Rose does not cite evidence that he fumbled for the missing key or that he was momentarily confused by its absence when his snowmobile accelerated out of control. In short, there is no evidence that Summit Lodge "exposed [Rose] to a significantly elevated level of risk" by eliminating one method of manually turning off the engine. *See Penunuri II*, 2017 WL 3697701, at *9.

        3) Conclusion

Given the undisputed material facts in this case, a reasonable jury could not find that Summit Lodge failed to observe "even slight care" in the inspection and maintenance of the snowmobile's throttle or when it modified the snowmobile to eliminate the need for a key. *See Penunuri II*, 2017 WL 3697701, at *8 (citation omitted). Nor could a reasonable jury find that Summit Lodge exhibited "carelessness or recklessness to a degree that shows utter indifference to the consequences that may result." *Id.* (citation omitted). Summit Lodge, therefore, is entitled to summary judgment on Rose's gross negligence claim.

## II. MOTION TO EXCLUDE EXPERT TESTIMONY

Because the court grants summary judgment on all of Rose's claims, Summit Lodge's motion to exclude expert testimony is moot.

## CONCLUSION AND ORDER

The court ORDERS as follows:

(1) The court GRANTS Summit Lodge's motion for summary judgment. [Docket 42].

(2) The court DENIES AS MOOT Summit Lodge's motion to exclude expert testimony. [Docket 50].

DATED September 6, 2018.

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge